**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LOANDEPOT.COM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 23--0681-MN |
| | ) | |
| v. | ) | |
| | ) | |
| MOVEMENT MORTGAGE, LLC, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM OF DEFENDANT

Defendant Movement Mortgage, LLC ("Defendant" or "Movement"), by and through its undersigned counsel, hereby submits this Answer with Affirmative Defenses and Counterclaim, in response to the Complaint filed by Plaintiff loanDepot.com, LLC ("Plaintiff" or "LoanDepot"), and hereby answers and responds as follows:

## STATEMENT OF ANSWER

1.      Defendant admits that LoanDepot has also commenced arbitrations against certain former employees, which are ongoing. Defendant denies the remainder of the allegations in Paragraph 1 of the Complaint.

2.      To the extent a response is required, Defendant denies the allegations in Paragraph 2 of the Complaint.

3.      Defendant admits only that Defendant and Plaintiff are competitors and that Defendant employed the individuals listed in Paragraph 3. Defendant lacks information sufficient to admit or deny the remainder of the allegations in Paragraph 3 of the Complaint.

4.      Defendant denies the allegations in Paragraph 4 of the Complaint.

5.      Defendant denies the allegations in Paragraph 5 of the Complaint.

6.      Defendant denies the allegations in Paragraph 6 of the Complaint.

7.      Defendant denies the allegations in Paragraph 7 of the Complaint.

8.      Defendant denies the allegations in Paragraph 8 of the Complaint.

9.      Defendant denies the allegations Paragraph 9 of the Complaint.

10.     Defendant denies the allegations in Paragraph 10 of the Complaint.

THE PARTIES

11.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 11 of the Complaint.

12.     Defendant admits only that Movement Mortgage, LLC is a Delaware limited liability company, with its principal place of business located in South Carolina. Defendant denies the remainder of the allegations in Paragraph 12.

13.     Defendant admits that Defendant and Plaintiff are competitors.

JURISDICTION AND VENUE

14.     The allegations in Paragraph 14 set forth conclusions of law and, thus, no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 14 of the Complaint.

15.     The allegations in Paragraph 15 set forth conclusions of law and, thus, no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 15 of the Complaint.

## FACTUAL ALLEGATIONS

### The Business

16.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 16 of the Complaint.

17.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 17 of the Complaint.

18.     Defendant admits the allegations in Paragraph 18 of the Complaint.

### LoanDepot's Protection of Its Confidential and Trade Secret Information

19.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 19 of the Complaint.

20.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 20 of the Complaint.

21.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 21 of the Complaint.

22.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 22 of the Complaint.

23.     The allegations in Paragraph 23 set forth conclusions of law and, thus, no response is required. To the extent a response is required, Defendant lacks information sufficient to admit or deny the allegations in Paragraph 23 of the Complaint.

24.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 24 of the Complaint.

25.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 25 of the Complaint.

26.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 26 of the Complaint.

27.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 27 of the Complaint.

28.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 28 and its subparagraphs of the Complaint.

29.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 29 of the Complaint.

30.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 30 and its subparagraphs of the Complaint.

<u>The Former Employees' Incentive Agreements</u>

31.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 31 of the Complaint.

32.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 32 of the Complaint.

33.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 33 of the Complaint.

34.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 34 of the Complaint.

35.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 35 of the Complaint.

36.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 36 of the Complaint.

37.     To the extent the allegations in Paragraph 37 of the Complaint are directed at Defendant, Defendant denies the allegations.

<u>The Virginia Employees</u>

38.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 38 of the Complaint.

39.     Defendant admits only that around September 2021, Mr. Johnson met with employees of Movement.  Defendant denies the remainder of the allegations in Paragraph 39 of the Complaint.

40.     Defendant admits only that around October 2021, Mr. Brennan communicated with Mr. Johnson via text message.  Defendant denies the remainder of the allegations in Paragraph 40 of the Complaint.

41.     Defendant denies the allegations in Paragraph 41 of the Complaint.

42.     Defendant denies the allegations in Paragraph 42 of the Complaint.

43.     Defendant admits only that on or around October 11, 2021, Sean Johnson and Chris Shelton texted regarding Mr. Johnson and his team's sales volume and production. Defendant denies the remainder of the allegations in Paragraph 43.

44.     Defendant denies the allegations in Paragraph 44 of the Complaint.

45.     Defendant denies the allegations in Paragraph 45 of the Complaint.

46.     Defendant denies the allegations in Paragraph 46 of the Complaint.

47.     Defendant denies the allegations in Paragraph 47 of the Complaint.

48.     Defendant denies the allegations in Paragraph 48 of the Complaint.

49.     Defendant admits the allegations in Paragraph 49.

50.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 50 of the Complaint.

51.     Defendant admits only that additional employees from LoanDepot joined its Fairfax operations in October 2021. Defendant denies the remainder of the allegations in Paragraph 51 of the Complaint.

52.     Defendant admits only that around October 2021, Mr. Johnson and Mr. Hottle communicated via text message.  Defendant denies the remainder of the allegations in Paragraph 52 of the Complaint.

53.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 53 of the Complaint.

54.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 54 of the Complaint.

55.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 55 of the Complaint.

56.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 56 of the Complaint.

57.     To the extent the allegations in Paragraph 57 of the Complaint are directed at Defendant, Defendant denies the allegations.

58.     Defendant denies the allegations in Paragraph 58 of the Complaint.

### The Pennsylvania Employees

59.     Defendant admits that Messrs. Kunzig, DePaul, and Rizzello joined Movement around November 2021.

60. Defendant lacks information sufficient to admit or deny the allegations in Paragraph 60 of the Complaint.

61. Defendant admits only that Mr. Saritsoglou joined Movement. Defendant lacks information sufficient to admit or deny the remainder of the allegations in Paragraph 61 of the Complaint.

62. Defendant lacks information sufficient to admit or deny the allegations in Paragraph 62 of the Complaint.

63. Defendant denies the allegations in Paragraph 63 of the Complaint.

64. Defendant denies the allegations in Paragraph 64 of the Complaint.

65. Defendant denies the allegations in Paragraph 65 of the Complaint.

66. Defendant denies the allegations in Paragraph 66 of the Complaint.

67. Defendant admits only that Mr. Kontostergios sent an internal Movement email with the quoted language related to the licenses of Saritsoglou, Rizzello and DePaul. Defendant denies the remainder of the allegations in Paragraph 67.

68. Defendant denies the allegations in Paragraph 68 of the Complaint.

69. Defendant denies the allegations in Paragraph 69 of the Complaint.

70. Defendant denies the allegations in Paragraph 70 of the Complaint.

71. Defendant denies the allegations in Paragraph 71 of the Complaint.

72. Defendant denies the allegations in Paragraph 72 of the Complaint.

## The Florida Employees

73. Defendant lacks information sufficient to admit or deny the allegations in Paragraph 73 of the Complaint.

74.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 74 of the Complaint.

75.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 75 of the Complaint.

76.     Defendant denies the allegations in Paragraph 76 of the Complaint.

77.     Defendant denies the allegations in Paragraph 77 of the Complaint.

78.     Defendant denies the allegations in Paragraph 78.

79.     Defendant admits only that Mr. Higgins and Movement discussed Mr. Higgins' employment with Movement around October 2021. Defendant denies the remainder of the allegations in Paragraph 79 of the Complaint.

80.     Defendant admits only that Messrs. Higgins, Holzum, and Raff met with employees of Movement around November 2021. Defendant denies the remainder of the allegations in Paragraph 80 of the Complaint.

81.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 81 of the Complaint.

82.     Defendant admits the allegations in Paragraph 82 of the Complaint.

83.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 83 of the Complaint.

84.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 84 of the Complaint.

85.     Defendant admits the allegations in Paragraph 85 of the Complaint.

86.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 86 of the Complaint.

87.     Defendant admits the allegations in Paragraph 87 of the Complaint.

88.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 88 of the Complaint.

89.     Defendant admits the allegations in Paragraph 89 of the Complaint.

<u>COUNT I</u>
VIOLATION OF THE DEFEND TRADE SECRETS ACT ("DTSA),
18 U.S.C. §§ 1836, Et Seq.

90.     Defendant incorporates and repeats its responses to Paragraphs 1-89 of the Complaint.

91.     Defendant denies the allegations in Paragraph 91 of the Complaint.

92.     The allegations in Paragraph 92 of the Complaint set forth conclusions of law. To the extent a response to Paragraph 92 of the Complaint is required, Defendant denies the allegations.

93.     Defendant denies the allegations in Paragraph 93 of the Complaint.

94.     Defendant denies the allegations in Paragraph 94 of the Complaint.

95.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 95 of the Complaint.

96.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 96 of the Complaint.

97.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 97 of the Complaint.

98.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 98 of the Complaint.

99.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 99 of the Complaint.

100. Defendant lacks information sufficient to admit or deny the allegations in Paragraph 100 of the Complaint.

101. Defendant denies the allegations in Paragraph 101 of the Complaint.

102. The allegations in Paragraph 102 set forth conclusions of law to which no response is required. To the extent the allegations in Paragraph 102 of the Complaint are directed at Defendant, Defendant denies the allegations.

103. Defendant denies the allegations in Paragraph 103 of the Complaint.

104. Defendant denies the allegations in Paragraph 104 of the Complaint.

105. Defendant lacks information sufficient to admit or deny the allegations in Paragraph 105 of the Complaint.

106. Defendant denies the allegations in Paragraph 106 of the Complaint.

107. Defendant denies the allegations in Paragraph 107 of the Complaint.

108. Defendant denies the allegations in Paragraph 108 of the Complaint.

109. Defendant denies the allegations in Paragraph 109 of the Complaint.

<u>COUNT II</u>
UNFAIR COMPETITION

110. Defendant incorporates and repeats its responses to Paragraphs 1-109 of the Complaint.

111. Defendant lacks information sufficient to admit or deny the allegations in Paragraph 111 of the Complaint.

112. Defendant denies the allegations in Paragraph 112 of the Complaint.

113. Defendant denies the allegations in Paragraph 113 of the Complaint.

114. Defendant denies the allegations in Paragraph 114 of the Complaint.

115. Defendant denies the allegations in Paragraph 115 of the Complaint.

116.     Defendant denies the allegations in Paragraph 116 of the Complaint.

<u>COUNT III</u>
UNJUST ENRICHMENT

117.     Defendant incorporates and repeats its responses to Paragraphs 1-116 of the Complaint.

118.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 118 of the Complaint.

119.     Defendant denies the allegations in Paragraph 119 of the Complaint.

120.     Defendant denies the allegations in Paragraph 120 of the Complaint.

<u>COUNT IV</u>
TORTIOUS INTERFERENCE WITH CONTRACT

121.     Defendant incorporates and repeats its responses to Paragraphs 1-120 of the Complaint.

122.     Defendant lacks information sufficient to admit or deny the allegations in Paragraph 122 of the Complaint.

123.     Defendant denies the allegations in Paragraph 123 of the Complaint.

124.     Defendant denies the allegations in Paragraph 124 of the Complaint.

125.     Defendant denies the allegations in Paragraph 125 of the Complaint.

126.     Defendant denies the allegations in Paragraph 126 of the Complaint.

<u>COUNT V</u>
INTENTIONAL INTERFERENCE WITH
PROSPECTIVE CONTRACTUAL RELATIONS

127.     Defendant incorporates and repeats its responses to Paragraphs 1-126 of the Complaint.

128.     Defendant denies the allegations in Paragraph 128 of the Complaint.

129. Defendant lacks information sufficient to admit or deny the allegations in Paragraph 129 of the Complaint.

130. Defendant denies the allegations in Paragraph 130 of the Complaint.

131. Defendant denies the allegations in Paragraph 131 of the Complaint.

132. Defendant denies the allegations in Paragraph 132 of the Complaint.

133. Defendant denies the allegations in Paragraph 133 of the Complaint.

134. Defendant denies the allegations in Paragraph 134 of the Complaint.

135. Defendant denies the allegations in Paragraph 135 of the Complaint.

136. Defendant denies the allegations in Paragraph 136 of the Complaint.

## COUNT VI
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES

137. Defendant incorporates and repeats the allegations in Paragraphs 1-136 of the Complaint.

138. Defendant denies the allegations in Paragraph 138 of the Complaint.

139. Defendant denies the allegations in Paragraph 139 of the Complaint.

140. Defendant denies the allegations in Paragraph 140 of the Complaint.

141. Defendant denies the allegations in Paragraph 141 of the Complaint.

## COUNT VII
### VIOLATION OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT,
### S.C. CODE ANN. § 39-6-10, Et Seq.

142. Defendant incorporates and repeats the allegations in Paragraphs 1-141 of the Complaint.

143. To the extent the allegations in Paragraph 143 of the Complaint require a response, Defendant denies the allegations.

144. Defendant denies the allegations in Paragraph 144 of the Complaint.

145. Defendant denies the allegations in Paragraph 145 of the Complaint.

146. Defendant denies the allegations in Paragraph 146 of the Complaint.

147.  Defendant denies the allegations in Paragraph 147 of the Complaint.

148.  Defendant denies the allegations in Paragraph 148 of the Complaint.

149.  Defendant denies the allegations in Paragraph 149 of the Complaint.

150.  Defendant denies the allegations in Paragraph 150 of the Complaint.

## AFFIRMATIVE DEFENSES

Defendant repeats, reiterates and realleges each and every allegation and denial in this Answer with the same force and effect as if herein set forth in full.

### FIRST AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred under the doctrine of unclean hands. The public turmoil surrounding LoanDepot, including whistleblower lawsuits, shareholder lawsuits, harassment claims, unlawful pay practices, and massive layoffs, have eroded company morale and led to record turnover, particularly among LoanDepot's highest producing loan officers, which was in no way a result of improper recruiting methods by Movement. By way of example, some of the recent events leading to turnover include:

a.  In or around September 2021, LoanDepot's former Chief Operating Officer, Tammy Richards, brought a Whistleblower action against LoanDepot alleging that its Chief Executive Officer, Anthony Hsieh, ordered his sales team to relax underwriting standards and to close loans without properly vetting borrowers – in violation of numerous federal statutes, including the Mortgage Reform and Anti-Predatory Lending ("Dodd-Frank") Act – simply to increase LoanDepot's bottom line. Ms. Richards' lawsuit also made allegations of sexual harassment and gender discrimination, claiming the company maintained a "frat house" culture that

included lewd and sexist remarks and parties involving sex workers and illegal drugs;[1]

b. In 2020 and 2021, several LoanDepot shareholder-initiated class action lawsuits against the company for securities violations, including artificially inflating LoanDepot's stock before its initial public offering;[2]

c. LoanDepot began making one of the "largest series of cuts in the mortgage industry" in 2022, eliminating approximately 5,000 jobs;[3]

d. Beginning in or around 2020, LoanDepot began a practice of forcing loan officers to take reduced commissions by requiring them to redesignate certain self-generated loans as company referred, which earn lower commissions, as well as requiring loan officers to transfer their loans to loan consultants, resulting in the loan officer only earning a referral fee on the loans. In doing so, LoanDepot avoided paying loan officers full commission on files where, due to concessions, lock extension fees, and other cures, a full commission payout would have caused the company to lose profits. In addition to violating labor laws and contractual agreements with its loan officers, these actions violated Regulation Z.[4]

e. The practices set forth above led employees – concerned with their professional reputations, job security, regulatory risks, and overall culture at LoanDepot – to

---

[1] *See, e.g.*, Tammy Richards Lawsuit Against LoanDepot - The New York Times (nytimes.com) (last visited July 11, 2023).

[2] *See, e.g.*, LDI ALERT: Investors With Substantial Losses Have Opportunity to Lead the loanDepot, Inc. Class Action Lawsuit | Business Wire (last visited July 10, 2023).

[3] *See, e.g.*, Struggling loanDepot to cut nearly 5,000 jobs in 2022 - HousingWire (last visited July 10, 2023).

[4] *See, e.g.*, LoanDepot stiffed its own LOs on commissions, rival claims | National Mortgage News (last visited July 10, 2023).

begin looking for other jobs. Indeed, since 2021, LoanDepot's turnover has likely exceeded 60 or potentially 70%, with massive defections of high-level production staff.

SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted, based upon, *inter alia*, the facts described above.

THIRD AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred under the equitable doctrines of waiver and/or estoppel.

FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint fail due to the fact that Movement is a competitor of LoanDepot, such that any actions taken by Movement were subject to the doctrine of privilege.

FIFTH AFFIRMATIVE DEFENSE

Venue in this Court is improper under 28 U.S.C. § 1391, and this case should therefore be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

SIXTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over Defendant.

Defendant reserves the right to assert additional affirmative defenses as they become known.

## COUNTERCLAIM

Defendant, by and through the undersigned counsel, hereby asserts the following counterclaim against LoanDepot:

### I.     Factual Background

1.     Since at least 2020 LoanDepot has marred its own reputation in the mortgage industry by way of the unscrupulous conduct of its executives, its predatory and unlawful lending practices, its well-documented toxic workplace culture, its failure to support its loan officers, and its litigious behavior toward ex-employees. These incidents were widely reported in national news media and led to LoanDepot employees seeking alternative employment.

2.     Rather than addressing employees' concerns or reevaluating its policies and culture, LoanDepot began maliciously targeting its competitors and former employees through baseless legal proceedings, in an attempt to harm its competitors' efforts to grow and attract new talent.

3.     For example, in an action LoanDepot initiated against one competitor, CrossCountry Mortgage, LoanDepot attributed the "mass exodus" of employees to its competitor and accused the defecting employees of stealing LoanDepot's trade secrets.[5]

4.     In connection with the LoanDepot/CrossCountry action, one former LoanDepot employee, Michael Stowers, echoed allegations made by former LoanDepot COO Tammy Richards, in alleging that LoanDepot retaliated against him after he raised concerns about LoanDepot's policies and practices – specifically, its commission and compensation policies.[6]

---

[5]     *See id.*
[6]     *See id.*

5.      As noted in a public filing by LoanDepot's former employees, loan officers were leaving LoanDepot simply because they were "deeply concerned with LoanDepot's troublesome business practices and compensation tactics designed to maximize its own profit at the expense of its employees, and without regard to its own customers."[7]

6.      As stated above, following the scandals involving LoanDepot's predatory lending practices, its compensation practices, its discriminatory treatment of female employees, widespread layoffs, and its toxic workplace environment overall, numerous LoanDepot employees began seeking new employment with LoanDepot's competitors.

**II.      <u>LoanDepot's Malicious Targeting of Its Former Employees and Competitors</u>**

7.      Over a period of approximately one year, Plaintiff LoanDepot has targeted Movement and its employees through baseless and frivolous legal proceedings, for the sole purpose of interfering with Movement's business.

8.      Beginning in 2022, LoanDepot launched a campaign of hindering Movement's business by filing an array of arbitration proceedings, which loanDepot knew had little to no merit, aimed at scaring prospective loan officers away from joining Movement, who had previously been seeking employment with Movement.

9.      Specifically, in February 2022, LoanDepot began arbitration proceedings against Movement employees Sean Johnson and Kevin Luchko.

10.      These proceedings were not calculated to remedy any actual injury suffered by LoanDepot, or to protect LoanDepot's legitimate business interests. Rather, they were simply meant to harass the departed employees and set an example for other employees so they would not also join Movement.

---

[7]      *See id.*

11. As a major residential mortgage lender with thousands of employees, LoanDepot is well aware that an employer has no proprietary claim to an employee's experience, knowledge, or skill, and that an employee's personal business contacts do not constitute trade secrets belonging to an employer.

12. Further, LoanDepot was well aware that employees were leaving the company in droves, not because of any prohibited solicitation, but of their own volition due to conditions at LoanDepot.

13. Due to its frivolous arbitration proceedings against Messrs. Johnson and Luchko, other employees of LoanDepot – who were being lawfully pursued by Movement and by recruiters on Movement's behalf – were intimidated and scared away from joining Movement. Accordingly, as LoanDepot clearly intended, its litigious behavior has tortiously interfered with Movement's prospective business relations and profits.

14. The employees who left LoanDepot to join Movement were driven by their concerns about LoanDepot's business practices, as well as their desire to continue working with Messrs. Johnson and Luchko.

15. Mr. Johnson, in particular, had worked with a number of loan officers at Movement even prior to joining LoanDepot. These loan officers followed Mr. Johnson to LoanDepot, and then eventually followed him back to Movement.

16. Upon information and belief, these loan officers had enjoyed working within Movement's supportive and well-structured environment, and desired to move back to Movement in order to continue working with Mr. Johnson. These employees also desired to distance themselves from the harmful and unlawful behavior condoned by LoanDepot's executives, which cast a shadow over their own work and careers in the mortgage industry.

17.    Upon information and belief, numerous LoanDepot employees learned that LoanDepot had initiated arbitration proceedings against Messrs. Johnson and Luchko, in addition to the cascade of other lawsuits LoanDepot had initiated against former employees and competitors.  As a result, LoanDepot employees – many of whom were in talks with Movement or with recruiters acting on Movement's behalf – were intimidated and discouraged from joining Movement.

18.    By hindering Movement's recruiting efforts, LoanDepot has cost Movement significant damages, including loss of revenues and profits, loss of reputation, and loss of goodwill in the industry.

## COUNT I

**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

19.    Movement repeats and reasserts each of the previous paragraphs as though the same were set forth herein.

20.    Between 2020 and 2023, Movement fostered business relationships and networking connections with numerous prospective employees, including loan officers who were employed by LoanDepot.

21.    Movement expected to derive revenues and profits from these prospective business relationships.

22.    LoanDepot was aware of these relationships, because it purposely targeted former LoanDepot employees, including Messrs. Johnson and Luchko, in legal proceedings that were baseless, frivolous, not calculated to remedy any actual injury, and not calculated to protect any legitimate business interest, all in an effort to hamper Movement's recruiting efforts.

23.    Because of its malicious and abusive use of the legal process, LoanDepot deterred loan officers from joining Movement.

24.    Movement had a reasonable expectation of future business relationships with potential employees who indicated interest in joining Movement, as these individuals had applied for positions at Movement, and/or were in discussions with Movement and Movement's recruiters concerning their desire to join Movement.

25.    There was a reasonable probability that Movement would have entered into business relationships with these prospective employees, because they had submitted employment applications and/or were in discussions with Movement concerning their desire to join Movement.

26.    LoanDepot knowingly and purposefully intimidated and discouraged its loan officers from joining Movement, and thus prevented these employees from joining Movement.

27.    LoanDepot engaged in these activities while fully aware of the prospective business relationships that Movement intended to pursue and used malicious and unlawful conduct to facilitate the interference with Movement's prospective business relationships as alleged herein.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, as to all counts, Movement respectfully requests that the Court enter judgment in its favor and award the following relief against LoanDepot:

a.    Actual and compensatory damages, including Movement's lost profits,

b.    Attorneys' fees and expenses and costs of pursuing this counterclaim and defending LoanDepot's malicious and baseless claims;

c.    Double or treble damages and punitive damages as appropriate;

d.    An Order enjoining LoanDepot from further disparaging Movement; and

e.    Such other relief as the Court deems just and proper.

OF COUNSEL

CONNOLLY GALLAGHER LLP

Ari Karen (*pro hac vice forthcoming*)
Katharine Thomas Batista *(pro hac vice forthcoming*)
MITCHELL SANDLER LLC
1120 20th Street NW, Suite 725
Washington, D.C. 20036
Telephone: (202) 886-5260
akaren@mitchellsandler.com
kbatista@mitchellsandler.com

*/s/ Lauren P. DeLuca*
Lauren P. DeLuca (Del. Bar No. 6024)
1201 N. Market St., 20th Floor
Wilmington, DE 19801
Telephone: (302) 757-7300
ldeluca@connollygallagher.com

*Attorney for Defendant*
*Movement Mortgage, LLC*

Dated: July 31, 2023