# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LOANDEPOT.COM, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. 23-cv-00681-MN |
| MOVEMENT MORTGAGE, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## OPENING BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS OR STAY DEFENDANT'S COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12

Of Counsel:

Paul J. Kennedy (Admitted *Pro Hac Vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., NW, Suite 400
Washington, DC 20006.4046
202-842-3400 (Phone)
pkennedy@littler.com

Matthew J. Hank (Admitted *Pro Hac Vice*)
LITTLER MENDELSON, P.C.
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
267-402-3000 (Phone)
mhank@littler.com

**COLE SCHOTZ P.C.**
Andrew L. Cole (No. 5712)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 652-3131 (Phone)
(302) 652-3117 (Fax)
acole@coleschotz.com

*Attorneys for Plaintiff,*
*loanDepot.com, LLC*

Dated: August 28, 2023

# **TABLE OF CONTEN**TS

Page

I.  NATURE AND STAGE OF PROCEEDINGS AND STATEMENT OF FACTS ........... 2

   A.  LOANDEPOT'S COMPLAINT ................................................................. 2

   B.  MOVEMENT'S COUNTERCLAIM BASED ON THE *LUCHKO* AND *JOHNSON* ARBITRATIONS ................................................................. 3

   C.  LOANDEPOT HAS OBTAINED PRELIMINARY INJUNCTIVE RELIEF IN *LUCHKO* AND THE CASE IS PROCEEDING THROUGH DISCOVERY ................................................................................................ 3

   D.  *JOHNSON* IS PROCEEDING THROUGH DISCOVERY ................................. 4

II.  SUMMARY OF THE ARGUMENT ................................................................. 5

III.  ARGUMENT ......................................................................................................... 6

   A.  FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) GOVERN THIS MOTION ................................................................................ 6

   B.  RULE 12(B)(1) AND RULE 12(B)(6) REQUIRE DISMISSAL OF MOVEMENT'S COUNTERCLAIM ............................................................... 7

      1.  PROVING AN ABUSE OF PROCESS IS A *SINE QUA NON* OF MOVEMENT'S COUNTERCLAIM, BUT MOVEMENT HAS NOT PLEADED FACTS PLAUSIBLY SUPPORTING ITS STANDING, ITS THEORY OF ABUSIVE PROCESS IS PREMATURE, AND IT HAS NOT PLEADED THE ELEMENTS OF ABUSE OF PROCESS ................................................................ 7

         A.  PROVING AN ABUSE OF PROCESS IS A *SINE QUA NON* OF MOVEMENT'S COUNTERCLAIM ............................ 8

         B.  MOVEMENT LACKS STANDING TO ESTABLISH AN ABUSE OF PROCESS ................................................................ 9

         C.  ANY ABUSE OF PROCESS CLAIM WOULD BE PREMATURE .......................................................................... 10

         D.  MOVEMENT FAILS TO PLEAD FACTS PLAUSIBLY SUPPORTING ABUSE OF PROCESS ..................................... 12

      2.  MOVEMENT FAILS TO PLEAD FACTS PLAUSIBLY SUGGESTING THE REASONABLE PROBABILITY OF A BUSINESS OPPORTUNITY ................................................................ 15

IV.  CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Fin. Lending Corp. v. Keystone State Mtg. Corp.,*
No. 96-191, 1996 WL 544425 (E.D. Pa. Sept. 4, 1996) ............................................. 11

*Adams v. Klein,*
No. 1:18-cv-01330-RGA, 2019 U.S. Dist. LEXIS 147927 (D. Del. Aug. 30,
2019) ................................................................................................................. 13, 14, 18

*Allscripts Healthcare, LLC v. Andor Health, LLC,*
2021 WL 4425767 (D. Del. Sept. 27, 2021) ............................................................. 7

*Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.),*
672 F.3d 113 (2d Cir. 2011) ................................................................................... 10

*Anglin v. United States,*
No. 20-276 (MN), 2021 WL 1063125 (D. Del. Mar. 18, 2021) (Noreika, J.) .......... 9

*Assocs. Fin. Servs. Co. v. Bowman, Heintz, Boscia, & Vician, P.C.,*
No. 99-1725-C-M/S, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind. Mar. 31, 2004) ........ 9

*Blue v. Fireman,*
No. 2021-0268, 2022 Del. Ch. LEXIS 44 (Del. Ct. Ch. Feb. 28, 2022) .................. 17

*Entertainment Data Oracle, Inc. v. iSpot.TV, Inc.,*
No. N22C-06-133, 2022 WL 17481944 (Del. Super. Ct. 2022) ............................... 12

*Erie R. Co. v. Thompkins,*
304 U.S. 64 (1938) ................................................................................................. 7

*Esaka v. Nanticoke Health Servs.,*
752 F. Supp. 2d 476 (D. Del. 2010) ......................................................................... 3

*Harrison v. Soroof Int'l, Inc.,*
320 F. Supp. 3d 602 (D. Del. 2018) ......................................................................... 6

*Judicial Watch, Inc. v. U.S. Senate,*
432 F.3d 359 (D.C. Cir. 2005) ............................................................................... 12

*Kimbleton v. White,* No. 12-974, 2014 U.S. Dist. LEXIS 123091 (D. Del. Sept. 4,
2014) ....................................................................................................................... 16

*Korotki v. Hiller & Arban, LLC,*
No. N15C-07-164 CCLD WCC, 2016 Del. Super. LEXIS 316 (Del. Super. Ct.
July 1, 2016) ................................................................................................. 10, 11, 12, 15

*KT4 v. Palantir Techs*,
No. N17C-12-212, 2021 Del. Super. LEXIS 502 (Del. Super. Ct. June 24, 2021) ............................................................................................................................8

*Kyle v. Apollomax, LLC*,
987 F. Supp. 2d 519 (D. Del. 2013) ................................................................................7

*Larobina v. McDonald*,
876 A.2d 522 (Conn. 2005) ..........................................................................................12

*Luo v. Owen J. Roberts School Dist.*,
No. 14-6354, 2016 WL 6962547 (E.D. Penn. Nov. 28, 2016) ..............................11

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011) ............................................................................................6

*Movement Mortgage, LLC, v. Ward*,
3:14-cv-23-RJC-DCK, 2014 U.S. Dist. LEXIS 46809 (W.D.N.C. Apr. 4, 2014) .........................................................................................................................1, 9

*Naythons v. Stradley, Ronon, Stevens & Young, LLP*,
No. 07-4489, 2008 U.S. Dist. LEXIS 35301 (E.D. Pa. Apr. 30, 2008) ...................9

*Nix v. Sawyer*,
466 A.2d 407 (Del. Super. Ct. 1983) ..........................................................................13

*Orfanos v. Athenian, Inc.*,
66 Md. App. 507, 522–23, 505 A.2d 131, 139–40 (1986) ........................................8

*Organovo Holdings, Inc. v. Dimitrov*,
162 A.3d 102 (Del. Ct. Ch. Jun. 5, 2017) .....................................................15, 16

*Parker v. Learn the Skills Corp.*,
530 F. Supp. 2d 661 (D. Del. 2008) .............................................................................16

*Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n*,
856 F. Supp. 910 (E.D. Pa. 1994) .................................................................................8

*Registered Agent Sols., Inc. v. Corp. Serv. Co.*,
No. 1:21-cv-786-SB, 2022 WL 911253 (D. Del. Mar. 28, 2022) ...........................16

*Rei Holdings, LLC v. Law Offs. Of Ronald I. Chorches*,
LLC, No. HHD-CV21-6148938-S, 2022 Conn. Super. LEXIS 697 (Conn. Sup. Ct. June 6, 2022) ..........................................................................................10, 11

*Roxul USA, Inc. v. Armstrong World Indus., Inc.*,
No. 17-1258, 2018 WL 810143 (D. Del. Feb. 9, 2018) ......................................7, 16

*Rypac Packaging Mach., Inc. v. Coakley*,
  No. 16069, 2000 Del. Ch. LEXIS 64 (Del. Ct. Ch. May 1, 2000)..........................................17

*Scrivner v. Socorro Indep. School Dist*,
  169 F.3d 969 (5th Cir. 1999) ..........................................................................................1, 8, 9

*Soterion Corp. v. Soteria Mezzanine Corp.*,
  No. 6158–VCN, 2012 WL 5378251 (Del. Ct. Ch. Oct. 31, 2012) ........................................13

*Spence v. Spence*,
  No. K11C-06-035 JTV, 2012 Del. Super. LEXIS 188 (Del. Super. Ct. Apr. 20,
  2012) .....................................................................................................................................15

*Syncora Guarantee, Inc. v. Colorado Mills, LLC*,
  1:15-cv-01703-JLK, 2016 WL 11692095 (D. Colo. May 17, 2016) ......................................14

*Terrell v. Del. State Univ.*,
  No. 09-464, 2010 U.S. Dist. LEXIS 74841 (D. Del. July 23, 2010) ......................................15

*Truinject Corp. v. Galderma, S.A.*,
  No. 19-592-LPS-JLH, 2020 U.S. Dist. LEXIS 156255 (D. Del. Aug. 28, 2020)....................17

*U.S. Bank Nat'l Ass'n v. Gunn*,
  23 F. Supp. 3d 426 (D. Del. 2014)...........................................................................................7

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
  No. 10-3724, 2013 WL 4104458 (N.D. Cal. Aug. 12, 2013) ..........................................11, 12

Plaintiff loanDepot.com, LLC (loanDepot) sued Defendant Movement Mortgage, LLC (Movement) because Movement induced a number of loanDepot's former loan officers to misappropriate loanDepot's confidential information, breach their contracts with loanDepot by soliciting loanDepot's employees, and take other actions designed to benefit Movement by allowing it to unfairly compete with loanDepot. loanDepot first filed separate arbitration proceedings against several of these loan officers based on this illegal conduct, then it sued Movement when it learned Movement was complicit in the loan officers' nefarious activities. Such cases are not unusual, *see, e.g., Movement Mortgage, LLC, v. Ward*, 3:14-cv-23-RJC-DCK, 2014 U.S. Dist. LEXIS 46809 (W.D.N.C. Apr. 4, 2014), and it is a company's "constitutional right" to bring proceedings such as those brought by loanDepot against their former employees, *Scrivner v. Socorro Indep. School Dist*, 169 F.3d 969, 972 (5th Cir. 1999). Nevertheless, choosing an "offense is the best defense" strategy, Movement filed its counterclaim against loanDepot for "tortious interference with prospective business relations." As that theory's basis, Movement alleges loanDepot's arbitration proceedings against former loanDepot employees Kevin Luchko and Sean Johnson are a "malicious and abusive use of the legal process" intended to "hamper Movement's recruiting efforts." (D.I. 5, Counterclaim ¶¶ 22-23.)

Movement's counterclaim is a novel attempt to assert an abuse-of-process claim without admitting it is doing so. The Court must dismiss Movement's counterclaim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for two reasons. *First*, Movement cannot establish an abuse-of-process claim against loanDepot: (1) Movement lacks standing to challenge arbitrations against the loan officers as an abuse of process, (2) any such challenge is premature, and (3) Movement has not pleaded facts plausibly supporting an abuse of process (for example, Movement provides no facts regarding the *Luchko* and *Johnson* arbitrations that would support a conclusion

those arbitrations are baseless). *Second*, Movement does not plead sufficient facts to support its allegation it has lost business relationships because of loanDepot's alleged conduct, a necessary element of a claim for intentional interference with business relations. Movement offers only a conclusory, generalized hypothesis it could not hire unidentified loanDepot employees because of loanDepot's private arbitrations against Luchko and Johnson.

## I.  NATURE AND STAGE OF PROCEEDINGS AND STATEMENT OF FACTS

### A.  loanDepot's Complaint

loanDepot and Movement are competitors in the mortgage business. (D.I. 5, p. 1, ¶ 3.) Beginning around September 2021, Movement orchestrated a raid of numerous key loanDepot employees, not for their general skills and knowledge – which are fair game – but for the loanDepot relationships and confidential information these employees could bring to Movement. (D.I. 1, ¶¶ 1-10.) Subverting the time and expenditure of resources otherwise required to build customer relationships and related business information, Movement was complicit with multiple loanDepot employees, while they were employed by loanDepot, to choreograph their departures and misappropriation of data, to induce them to breach their contractual obligations to loanDepot (such as agreements not to solicit other loanDepot employees), and to effectively lift loanDepot business from various loanDepot offices and place it in the hands of Movement. (*See id.*) This effort redirected to Movement business relationships and confidential and proprietary information that loanDepot otherwise would have profited from. (D.I. 1, ¶ 133.) Thus, on June 23, 2023, loanDepot filed its complaint (D.I. 1), asserting seven claims against Movement: (1) violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* (DTSA); (2) unfair competition; (3) unjust enrichment; (4) tortious interference with contract; (5) intentional interference with prospective contractual relations; (6) aiding and abetting breach of fiduciary duties; and (7) violation of the South Carolina Unfair Trade Practices Act. (*Id.* at ¶¶ 110-150.)

**B.    Movement's Counterclaim Based On The *Luchko* And *Johnson* Arbitrations**

On July 31, 2023, Movement filed its Answer, Affirmative Defenses, and Counterclaim. (D.I. 5).   In its Counterclaim, Movement alleges a single claim, tortious interference with prospective business relations, against loanDepot.   (*Id.* at ¶¶ 19-27).   Movement alleges that, in February 2022, loanDepot began "baseless" arbitrations against two former loanDepot employees, Kevin Luchko and Sean Johnson, which Movement characterizes as a "malicious and abusive use of the legal process."   (D.I. 5, Counterclaim ¶¶ 22, 23.)   According to Movement, in pursuing these arbitrations, loanDepot is not pursuing any legitimate goal, but is intentionally "hamper[ing] Movement's recruiting efforts."   (D.I. 5, Counterclaim ¶ 22.)   Both arbitrations "are ongoing." (D.I. 5, Answer ¶ 1.)

Movement's pleading tells the Court nothing about either arbitration, beyond the conclusory allegations set forth above.   But, because the Court may consider documents integral to or explicitly relied upon in the pleading when resolving a motion to dismiss, *e.g., Esaka v. Nanticoke Health Servs.*, 752 F. Supp. 2d 476, 480 (D. Del. 2010), the Court may take judicial notice of certain facts about the arbitrations.

**C.    LoanDepot Has Obtained Preliminary Injunctive Relief In *Luchko* And The Case Is Proceeding Through Discovery**

LoanDepot filed its verified statement of claims against Kevin Luchko on February 11, 2022, a copy of which is attached as Exhibit A.   loanDepot brings claims under the DTSA and other counts, alleging that, on January 7, 2022, after more than six years of employment with loanDepot, Luchko resigned and immediately went to work for Movement, in Plymouth Meeting, Pennsylvania.   (*See id.* at ¶ 1.)   While still employed and paid handsomely by loanDepot to work as a Producing Branch Manager, Luchko spent his final days transferring loanDepot's confidential and trade secret information to systematically begin the transfer of an existing pipeline of loans

originated at loanDepot to Movement. (*See id.*at ¶ 2.) For example, on January 7, 2022, at 2:59 a.m. EST, less than eight hours before he abruptly resigned from loanDepot, Luchko transferred a compilation of customer data contained in a file named "all contacts.xlsx" from his loanDepot company-issued laptop to his personal USB drive. (*See id.*at ¶ 3.)

To protect the status quo pending the outcome of the arbitral proceeding, on April 29, 2022, loanDepot obtained a consent decree from the Eastern District of Pennsylvania, enjoining Luchko from violating his non-disclosure and non-solicit obligations, from using various protected data, requiring him to cooperate with a forensic inspection of his smartphone and other devices, and providing various other forms of relief. (Exh. B.) That consent decree remains in effect. (*See id.*) On December 16, 2022, the Arbitrator, retired Magistrate Judge Thomas Rueter, issued a pre-hearing order in which he determined that the "all contacts" file mentioned above contains "Protected Information/Confidential Information," and he enjoined Mr. Luchko from "possessing, copying, or using" such information. (*See* Exh. C, Order of Judge Thomas J. Rueter, p. 7.) As Movement's lead counsel would agree (he also represents Luchko), discovery is proceeding in *Luchko*.

### D. *Johnson* is Proceeding Through Discovery

loanDepot filed its verified statement of claims against Sean Johnson on February 10, 2022, a copy of which is attached as Exhibit D. loanDepot brings claims under the DTSA, among other counts, alleging that, on October 26, 2021, after nearly four years of employment with loanDepot, Area Manager Johnson resigned and immediately went to work for Movement in Fairfax, Virginia. (See id. at ¶ 1.) But it was not just Johnson who left: he took with him six additional employees that same day, four other Mortgage Loan Originators (MLOs) and two Production Assistants (PAs), all of whom submitted choreographed email resignations over a three-day period (some within minutes of each other). (*See id*. at ¶ 2.) When asked by his supervisors about his departure,

4

Johnson – who was bound by an employee nonsolicitation provision and who owed a duty of loyalty to loanDepot – stated, "I'm taking my team with me." (*Id.*) Johnson was not, regrettably, making an idle boast: over the two weeks following his departure from loanDepot, 24 members of Johnson's team, both MLOs and PAs, had departed from Maryland, Washington D.C., and Delaware loanDepot offices for Movement. (*See id.* at ¶ 31.)

Johnson did not stop there. loanDepot later discovered Johnson sent *dozens* of documents containing loanDepot's confidential, trade secret, and consumer-protected information to his personal email address to use this information to his benefit at Movement. (*See id.* at ¶ 3.) These documents included a loanDepot customer list associated with another loanDepot loan officer, as well as customer names, mailing addresses, phone numbers, email addresses, loan types, loan amounts, interest rates, and other loan information. (*See id.* at ¶ 35(d).) Johnson also sent himself emails containing information about customers' loans. (*See id.* at ¶ 35(a-c).) As Movement's lead counsel would agree (he also represents Johnson), discovery is proceeding in *Johnson*.

## II.     SUMMARY OF THE ARGUMENT

- Movement lacks standing to challenge the arbitrations loanDepot filed against its former employees as an abuse of process.

- Any such challenge is premature while the *Luchko* and *Johnson* arbitrations are ongoing.

- Movement fails to plead facts plausibly supporting an abuse of process.

- Movement fails to plead facts plausibly suggesting a reasonable probability of a lost business opportunity.

### III. ARGUMENT

#### A. Federal Rules of Civil Procedure 12(b)(1) And 12(b)(6) Govern This Motion

loanDepot challenges under Rule 12(b)(1) Movement's standing to contest the *Luchko* and *Johnson* arbitrations as an abuse of process. "Motions under Rule 12(b)(1) may present either a facial or factual challenge to" a party's standing. *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 610 (D. Del. 2018). A facial challenge, which is what loanDepot makes here, is a challenge to standing based on facts "(1) found in the [pleading], (2) found in documents referenced in the [pleading], or (3) that are subject to judicial notice." *Id.* at 611. The Court reviews such challenges under the same standard as a Rule 12(b)(6) motion. *See id.*

loanDepot challenges under Rule 12(b)(6) Movement's effort to plead a cognizable claim. On a motion to dismiss under Rule 12(b)(6), the Court must take three steps: (1) identify the elements of the claim; (2) review the pleading to strike conclusory allegations; and (3) after considering the well-pleaded components of the pleading, evaluate whether the alleged facts plausibly suggest that all of the elements identified at step one exist. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

As explained below, Movement's lack of standing, the prematurity of its claim, and its failure to plead facts plausibly supporting the elements of its claim each constitutes an independent reason to dismiss its counterclaim. These defects warrant dismissal of Movement's counterclaim with prejudice. In the alternative, loanDepot invokes the first-filed rule for the proposition the Court should stay the counterclaim pending the outcome of *Luchko* and *DePaul.*

**B.** **Rule 12(b)(1) And Rule 12(b)(6) Require Dismissal Of Movement's Counterclaim**

1. **Proving An Abuse Of Process Is A *Sine Qua Non* Of Movement's Counterclaim, But Movement Has Not Pleaded Facts Plausibly Supporting Its Standing, Its Theory Of Abusive Process Is Premature, And It Has Not Pleaded The Elements Of Abuse Of Process**

To state a claim for tortious interference with prospective business relations, Movement must plead facts plausibly supporting these elements: (1) the reasonable probability of Movement's business opportunity, (2) loanDepot's intentional interference with that opportunity, (3) proximate causation, and (4) damages. *Roxul USA, Inc. v. Armstrong World Indus., Inc.*, No. 17-1258, 2018 WL 810143, at *8 (D. Del. Feb. 9, 2018) (citing *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ct. Ch. Jun. 5, 2017)).[1] To establish element two (loanDepot's nefarious intent), Movement claims the arbitrations against Luchko and Johnson constitute a "malicious and abusive use of the legal process" designed to thwart Movement's recruitment efforts. (D.I. 5, Counterclaim ¶ 23.)[2] But three fatal flaws undermine Movement's alchemic attempt to transform loanDepot's arbitrations *against two former employees* into a tort *against Movement*: (a) Movement lacks standing to claim the *Luchko* and *Johnson* arbitrations are an abuse of process; (b) any such challenge would be premature; and (c) Movement fails to allege facts plausibly suggesting the elements of a claim for abuse of process.

---

[1] Federal courts must apply the common law of the state whose law controls the claim. *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938). Nowhere in Movement's counterclaim does Movement specify what law controls its counterclaim. (*See* D.I. 5, pp. 19-20.) Both loanDepot and Movement, however, are "Delaware limited liability company[ies]" (D.I. 1, p. 4, ¶ 11; D.I. 5, at p. 2, ¶ 12), which militates toward the application of Delaware law, *see* Restatement (Second) of Conflict of Laws § 145(2)(c) (1971); *Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 524 (D. Del. 2013) (applying Delaware law to common law claims involving a Delaware LLC).

[2] *See Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704, 2021 WL 4425767, at *4 (D. Del. Sept. 27, 2021) ("Threatened or filed litigation can constitute improper interference if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.").

**Proving An Abuse Of Process Is A *Sine Qua Non* Of Movement's Counterclaim**

Establishing an abuse of process is a *sine qua non* of Movement's counterclaim, for two reasons.

*First*, "[a] tortious interference with prospective contractual relations claim is unusual in that a plaintiff ordinarily must prove at least one other violation in addition to the tortious interference claim itself." *KT4 v. Palantir Techs*, No. N17C-12-212, 2021 Del. Super. LEXIS 502, at *60 (Del. Super. Ct. June 24, 2021). Here, the "one other violation" Movement has attempted to plead is abuse of process. Courts have noted "[a]n action for intentional interference with contractual obligations based on a frivolous lawsuit is closely related conceptually to an action for wrongful use of civil proceeding." *Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n*, 856 F. Supp. 910, 942–43 (E.D. Pa. 1994) (citing *Orfanos v. Athenian, Inc*., 66 Md. App. 507, 522–23, 505 A.2d 131, 139–40 (1986)). loanDepot is unaware of *any* case in which a party has asserted a tortious or intentional interference claim based on separate litigation *not* fundamentally predicated on a claim of abuse of process.

*Second* (and relatedly), companies "have a constitutional right to file lawsuits [against former employees], tempered by the requirement that the suits have an arguable basis." *Scrivner*, 169 F.3d at 972 (questioning whether "counterclaims or lawsuits filed against a Title VII plaintiff ought to be cognizable as retaliatory conduct under Title VII," because of the constitutional problems that practice would raise); ); *see also OptimisCorp v. Waite*, No. 8773, 2015 WL 5147038, at *78 (Del. Ch. Ct. Aug. 26, 2015) ("Ordinarily, the filing of a lawsuit is privileged action and cannot form the basis of liability for tortious interference," provided the lawsuit is in

8

"good faith.").[3] Thus, if the *Luchko* and *Johnson* arbitrations were *anything* other than an abuse of process – *i.e.*, if they were an effort by loanDepot to redress at least arguable (to use the *Scrivner* court's term) grievances – loanDepot would have a due-process right to pursue those claims, even if so doing had some effect on Movement's recruiting. *See id.* Only if loanDepot had no arguable basis for the arbitrations might Movement's novel tort theory begin to make sense. This explains Movement's commitment to the theory that the arbitrations against Luchko and Johnson constitute a "malicious and abusive use of the legal process." (D.I. 5, Counterclaim ¶ 23.)

### b. Movement Lacks Standing To Establish An Abuse Of Process

The "irreducible constitutional minimum of standing" comprises (1) injury in fact, (2) causation, and (3) redressability. *Anglin v. United States*, No. 20-276 (MN), 2021 WL 1063125, at *2 (D. Del. Mar. 18, 2021) (Noreika, J.). An injury in fact is "a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Id.* (quotations omitted). Causation requires a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id.* (citations omitted). Redressability requires "a likelihood that the requested relief will redress the alleged injury." *Id.* (citations omitted).

Movement is not a party to the proceedings it claims are "abusive." Typically, however, only a party to a legal proceeding can establish standing to challenge that proceeding as an abuse of process. *See Naythons v. Stradley, Ronon, Stevens & Young, LLP*, No. 07-4489, 2008 U.S. Dist. LEXIS 35301, at **8-13 (E.D. Pa. Apr. 30, 2008) (analyzing case law and dismissing abuse of process claim because the plaintiff "was not a party to the underlying civil proceedings and, thus, legal process was not used against *him*"); *Assocs. Fin. Servs. Co. v. Bowman, Heintz, Boscia, & Vician, P.C.*, No. 99-1725-C-M/S, 2004 U.S. Dist. LEXIS 6520, at **72-75 (S.D. Ind. Mar. 31,

---

[3] Movement has filed similar lawsuits against its own former employees and competitors. *See Ward*, 2014 U.S. Dist. LEXIS 46809.

2004) (nonparty to underlying suit lacked standing to pursue abuse-of-process theory); *Rei Holdings, LLC v. Law Offs. Of Ronald I. Chorches*, LLC, No. HHD-CV21-6148938-S, 2022 Conn. Super. LEXIS 697, at **10-15 (Conn. Sup. Ct. June 6, 2022) (same).

Nowhere in its pleading does Movement state facts plausibly suggesting its counterclaim is an exception to this general rule. Movement tells us *nothing* about why the arbitrations are "abusive," and therefore nothing about why those arbitrations present a "concrete" threat of "actual or imminent" harm to Movement. Movement thus fails to plead an injury in fact.

Nor does Movement plead redressability. If it were true that the arbitrations were "abusive," and thus harming Movement, the only way to redress the harm would be to enjoin the arbitrations, relief Movement does not seek in its Prayer for Relief (*see* D.I. 5, p. 20) and that this Court lacks the authority to grant. *See Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.)*, 672 F.3d 113, 142 (2d Cir. 2011) (holding district court lacked authority under the FAA to enjoin the arbitration of claims covered by an arbitration agreement).

Movement has failed to allege facts plausibly suggesting it has standing to challenge the *Luchko* and *Johnson* arbitrations as an abuse of process, and so the Court should dismiss Movement's counterclaim for lack of standing.

### c. Any Abuse Of Process Claim Would Be Premature

Even if Movement had standing to challenge the *Luchko* and *Johnson* arbitrations as an abuse of process, such a challenge would be premature as a matter of well-settled law. Implicit in Movement's argument is the premise that loanDepot is not entitled to prevail on its claims in the pending arbitrations. But "these are the very issues in dispute in the pending [arbitrations; Movement's] logic therefore assumes the outcome of [loanDepot's] case[s], which ha[ve] yet to be decided." *Korotki v. Hiller & Arban, LLC*, No. N15C-07-164 CCLD WCC, 2016 Del. Super. LEXIS 316, at *14 (Del. Super. Ct. July 1, 2016). In *Korotki*, the Delaware Superior Court granted

the defendants' motion to dismiss an abuse of process claim based on separate litigation filed by the defendants that the plaintiffs alleged was frivolous, malicious, retaliatory, and filed for an improper purpose. *See id*. at *12. The court noted, "[e]ven if adequately plead ... [an] abuse of process claim ... would be dismissed as premature...." because *"[b]y definition, a lawsuit in its entirety cannot constitute an abuse of process when it has not yet been concluded." Id.* at 12, n.34 (emphasis added); *see also Luo v. Owen J. Roberts School Dist*., No. 14-6354, 2016 WL 6962547, at *2 (E.D. Penn. Nov. 28, 2016) (citing *Access Fin. Lending Corp. v. Keystone State Mtg. Corp*., No. 96-191, 1996 WL 544425, at *5 (E.D. Pa. Sept. 4, 1996)) (same). Likewise, in *U.S. Ethernet Innovations, LLC v. Acer, Inc*., No. 10-3724, 2013 WL 4104458, at *4 (N.D. Cal. Aug. 12, 2013), the court granted a motion to dismiss a claim for intentional interference with contractual relations (essentially the same claim asserted by Movement) because there was no allegation the underlying litigation on which that claim was based had concluded. The court emphasized the plaintiff had "cite[d] *no case in which a court has permitted an intentional interference claim to proceed based on litigation that is still ongoing even in part." Id*. (emphasis added).

The problems caused by the prematurity of Movement's counterclaim do not stop there. Allowing Movement's abuse-of-process theory to proceed would mean loanDepot's claims in *Luchko* and *Johnson* will have to be litigated twice, once in arbitration and once in this court. The *Korotki* court explained the problem thus:

> Although we do not suggest that success in the first action would be a prerequisite for an abuse of process claim by the plaintiff, it is apparent that the eventual outcome of that action and the evidence presented by the parties therein would be relevant in litigating an abuse of process claim. The plaintiff has not yet established that First Union is not legally entitled to the money that he claims the defendants are attempting to extort from him by their allegedly oppressive litigation tactics, or that First Union has no good faith reason to believe that it is entitled to the money. Those very issues are in dispute in the first action. If this abuse of process claim were allowed, the trial court would be required to litigate the issues twice. Moreover, allowing the claim could subject the courts to a

> flood of similarly duplicative claims and effectively chill the vigorous representation of clients by their attorneys.

*Id.* at **13-14 (quoting *Larobina v. McDonald*, 876 A.2d 522, 531 (Conn. 2005)).

The same considerations exist here: if the Court allowed Movement's tort claim to proceed, loanDepot's entitlement to the relief it seeks in *Luchko* and *Johnson* would be litigated twice, once in the arbitrations, and once in this Court. That consideration militated toward dismissal in *Korotki*, and it likewise weighs toward dismissal even more here, where the underlying disputes on which Movement's counterclaim is based are being litigated in arbitration proceedings because Luchko and Johnson entered into arbitration agreements with loanDepot. Allowing Movement's counterclaim to proceed before those proceedings have concluded would effectively allow Luchko and Johnson to litigate loanDepot's claims through "minitrials" in a federal court even though they signed binding arbitration agreements. *See id.*; *cf. Judicial Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 364 (D.C. Cir. 2005) (Williams, J., concurring) (observing that "a major function of the standing doctrine [is] to avoid premature judicial involvement in resolution of issues on the merits").[4]

> **d.**    **Movement Fails To Plead Facts Plausibly Supporting Abuse Of Process**

Even if Movement had standing to challenge the *Luchko* and *Johnson* arbitrations as an abuse of process (it does not), and if now were the time for such a challenge (it is not), Movement would still have to state a claim for which relief can be granted. To establish element two of its

---

[4] Alternatively, and for the same considerations discussed in *Korotki*, the Court should stay the counterclaim pending the outcome of *Luchko* and *Johnson*. *See Entertainment Data Oracle, Inc. v. iSpot.TV, Inc.*, No. N22C-06-133, 2022 WL 17481944, at **4-5 (Del. Super. Ct. 2022) (staying claim for tortious interference in a prospective business relationship in which plaintiff alleged a prior proceeding was pursued in bad faith, because the resolution of that proceeding "had an even chance of rendering the" tortious-interference claim moot).

counterclaim, loanDepot's perverse intent, Movement claims the arbitrations against Luchko and Johnson constitute a "malicious and abusive use of the legal process" designed to hinder Movement's recruitment efforts. (D.I. 5, Counterclaim ¶ 23.) As explained above, abusiveness is the linchpin of Movement's theory: if loanDepot's resort to arbitrations against Luchko and Johnson were not abusive – *i.e.*, if loanDepot's claims in arbitration were arguably valid – then loanDepot would be exercising its constitutional rights in bringing those actions, not committing a tort.

To plead a claim for abuse of process, Movement must plead facts plausibly supporting:

> 1) an ulterior purpose; and 2) a willful act in the use of the process not proper in the regular conduct of the proceedings. In explaining these elements, Prosser notes that some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required. Merely carrying out the process to its authorized conclusion, even though with bad intentions, does not result in liability. Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown.

*Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. Ct. 1983).

This standard of coerciveness[5] presents a considerable barrier: "an abuse of process claim can arise only by showing a perversion of the process itself." *Adams v. Klein*, No. 1:18-cv-01330-RGA, 2019 U.S. Dist. LEXIS 147927, at *5 (D. Del. Aug. 30, 2019) (quotation omitted); *see Soterion Corp. v. Soteria Mezzanine Corp.*, No. 6158–VCN, 2012 WL 5378251, at *13 (Del. Ct. Ch. Oct. 31, 2012) (stating that Delaware follows the Restatement (Second) of Torts and that

---

[5] The coercion required goes beyond the mere filing of a suit. In *Syncora Guarantee, Inc. v. Colorado Mills, LLC*, 1:15-cv-01703-JLK, 2016 WL 11692095, at *3 (D. Colo. May 17, 2016), the court granted the defendant's motion to dismiss the plaintiff's claims for intentional interference with contract and abuse of process, which, like Movement's counterclaim, were based on separate litigation the plaintiff alleged had been brought in bad faith, because, on the face of the pleadings, there was "no indication that Defendants' position [in the underlying litigation] was frivolous or without any legal support." The court noted that "[e]very action is somewhat coercive and puts a party to some inconvenience and expense in defending it." *Id.* (citing *Tappen v. Ager*, 599 F.2d 376, 380 n.2 (10th Cir. 1979)).

"[t]he Restatement specifically addresses the circumstances under which threatened or filed litigation can constitute improper interference. According to the Restatement, threatened or filed litigation is wrongful 'if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.'")

Movement has not tried to plead facts plausibly supporting the coerciveness or a perversion of the arbitral process required to support its claim. Movement has not attempted to plead facts plausibly suggesting loanDepot's claims in arbitration are not arguably valid. Movement has carefully avoided providing any factual detail in its counterclaim as to why it alleges, in conclusory fashion, that there is no arguable basis for loanDepot's claims in the arbitrations. Movement's counterclaim is devoid of any factual assertions that, if true, would allow a factfinder to conclude loanDepot is using *Luchko* or *Johnson* to coerce Movement, to effect some definite act or threat not authorized by the legal process, or to realize an objective not legitimate in the use of the process. Movement has told the Court virtually nothing about either case.[6] Accordingly, for the same reason the *Syncora Guarantee* plaintiff failed to plead facts supporting its claim, Movement has failed to plead facts plausibly suggesting *Luchko* and *Johnson* constitute a "malicious and abusive use of the legal process," as Movement baldly asserts in ¶ 23, and its counterclaim should be dismissed. *See also Adams*, 2019 U.S. Dist. LEXIS 147927, at *5 (dismissing with prejudice abuse of process theory for failure to state a claim); *Terrell v. Del. State Univ.*, No. 09-464, 2010 U.S. Dist. LEXIS 74841, at **18-19 (D. Del. July 23, 2010) (dismissing without prejudice abuse-of-process theory for failure to state a claim); *Korotki*, 2016 Del. Super. LEXIS 316, at *15 (finding

---

[6] The Court may reach that conclusion solely on the basis of the points made in § II.A-B. The facts discussed in § II.C-D, which the Court may also consider on a motion to dismiss, only reinforce the point.

14

that merely making a "conclusory" allegation that the underlying action is "frivolous" does not

state a claim for abuse of process); *Spence v. Spence*, No. K11C-06-035 JTV, 2012 Del. Super.

LEXIS 188, at *11 (Del. Super. Ct. Apr. 20, 2012) (finding, absent an allegation of coercion, an

abuse of process claim must be dismissed).[7]

### 2. Movement Fails To Plead Facts Plausibly Suggesting The Reasonable Probability Of A Business Opportunity

To plead the first element of its counterclaim, a reasonable probability of a business

opportunity, Movement must "identify a specific party who was prepared to enter into a business

relationship but was dissuaded from doing so by" loanDepot. *Organovo*, 162 A.3d at 122.

Generalized allegations of harm do not suffice. *Id.* Although Movement need not identify a party

by name, it must "do more than offer vague statements about unknown" business it would have

obtained but for loanDepot's alleged misuse of the arbitral process in *Luchko* and *Johnson*. *Id.* at

122-23. Movement does not clear this hurdle, for two reasons.

*First*, Movement alleges its lost "business opportunities" are unnamed numerous

prospective employees. (D.I. 5, p. 10, ¶ 20). Specifically, Movement alleges that over a three-

year period, it "fostered business relationships and networking connections with numerous

prospective employees, including loan officers who were employed by [l]oanDepot." (*Id.*)

(emphasis added). These are the kinds of allegations of "a nebulous, unascertainable class of

business relationships" the *Organovo* court rejected when granting dismissal of a tortious-

interference claim. *See id.* (citing *Kimbleton v. White*, No. 12-974, 2014 U.S. Dist. LEXIS 123091,

at *25 (D. Del. Sept. 4, 2014)). Movement does not identify a single person – either by name or

by providing factual specifics – it would have employed but for loanDepot's actions. Movement

---

[7] Because Movement's theory of intent hinges on its ability to establish the arbitrations are an abuse of process, it has likewise failed to plead facts plausibly suggesting loanDepot has the intent (prong two) needed for a tortious-interference claim.

has thus failed to properly plead the first element of its counterclaim.  *See id.* at 122 (dismissing a tortious interference claim because the complaint stated conclusory allegations that defendant interfered with its "bankers, customers, lenders, investors, and prospective investors" but provided no factual support or details other than plaintiff "believe[d] it has lost potential investors"); *Kimbleton*, 2014 U.S. Dist. LEXIS 123091, at *25 (holding allegations of interference with "prospective home buyers" cannot satisfy the first element requiring a reasonable probability of a business opportunity); *Registered Agent Sols., Inc. v. Corp. Serv. Co.*, No. 1:21-cv-786-SB, 2022 WL 911253, at *7 (D. Del. Mar. 28, 2022) (dismissing tortious interference claim where plaintiff alleged vague assertions it "lost over 70 clients" or its "customers switched to [defendant]"); *Roxul*, 2018 WL 810143, at *8 (dismissing a tortious interference claim when the pleading failed to allege "facts supporting an inference of a single distributor prepared to enter into a business relationship with [the plaintiff]").

*Second*, Movement's allegation that loanDepot's current and active loan officers would leave loanDepot to join Movement because they applied to or had discussions with Movement is too speculative and remote to state a *prima facie* claim under the first element.  (*See* Counterclaim, ¶ 24).  The facts alleged by Movement in the counterclaim demonstrate nothing more than a "mere hope" that job applicants would join Movement.   It is not enough for Movement to hypothesize, providing no factual specifics, that loanDepot employees have not applied for and accepted jobs at Movement because of the *Luchko* and *Johnson* private arbitrations.  *See Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 680-81 (D. Del. 2008) (dismissing tortious-interference claim where lost expectation of business opportunities was unreasonable given the competition in the marketplace); *Blue v. Fireman*, No. 2021-0268, 2022 Del. Ch. LEXIS 44, at *48 (Del. Ct. Ch. Feb. 28, 2022) (granting motion to dismiss claim for tortious interference with prospective business

relations on the first element because "[p]laintiffs plead no facts to quantify that expectancy, to support its existence, or to explain why it was reasonable to hold it," in other words, the "expectancy is based on a 'mere hope'") (internal citation omitted); *Rypac Packaging Mach., Inc. v. Coakley*, No. 16069, 2000 Del. Ch. LEXIS 64, at **39-40 (Del. Ct. Ch. May 1, 2000) (holding plaintiff failed to satisfy the first element because there was no basis to find that plaintiff had a valid expectancy of a continued, exclusive relationship with its principals because the "exclusive" contracts in the industry were terminable on relatively short notice). Movement's alleged "business dealings" do not rise to the level of the cases holding that the first element was met.[8]

## IV. CONCLUSION

Movement's counterclaim is a novel, back-door attempt to pursue an abuse-of-process claim. Because (1) Movement lacks standing to challenge *Luchko* and *Johnson* as an abuse of process, (2) any such challenge would be premature, (3) Movement has not pleaded the elements of an abuse-of-process claim, and (4) Movement has not pled facts supporting the elements of a tortious-interference claim, the Court should dismiss Movement's counterclaim. And, because none of these problems can be remedied, the dismissal should be *with prejudice*. *See Adams*, 2019

---

[8] *See Truinject Corp. v. Galderma, S.A.*, No. 19-592-LPS-JLH, 2020 U.S. Dist. LEXIS 156255, at *19 & n. 15 (D. Del. Aug. 28, 2020) (citing *Preston Hollow Capital LLC v. Nuveen LLC*, 2020 Del. Ch. LEXIS 140, 2020 WL 1814756, at **13-14 (Del. Ct. Ch. Apr. 9, 2020) (the alleged relationships included the following: formalized relationships involving contractual renewals; transactions already in progress at the time of the interference; discussions involving a dozen potential transactions and statements by a third-party that the plaintiff was a part of its business plan; and consistent prior dealings); *Agilent Technologies, Inc. v. Kirkland*, No. 3512-VCS, 2009 WL 119865, at **7-8 (Del. Ch. Jan. 20, 2009) (concluding that the detailed factual allegations described a reasonably likely business relationship with a specific third party, even though the third party was not identified by name); *Soterion Corp.*, 2012 WL 5378251, at *13 (factual allegations indicated that the plaintiff had "much more than a mere hope or mere perception of a prospective business relationship" because the plaintiff had "letters of intent" from third parties who had conducted "extensive due diligence activities"); *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, No. N15C–03–241, 2015 WL 6772638, at *8 (Del. Super. Ct. Nov. 2, 2015) (pleading alleged a plausible *bona fide* business expectancy where it specifically named some third parties that had previously invested in the claimant's prior ventures)).

U.S. Dist. LEXIS 147927, at *5 (dismissing with prejudice abuse-of-process theory for failure to state a claim). Alternatively, the Court should stay the counterclaim.

|  | **COLE SCHOTZ P.C.** |
|---|---|
| <u>Of Counsel:</u> | |
| | <u>*/s/ Andrew L. Cole*</u> |
| Matthew J. Hank (Admitted *Pro Hac Vice*) | Andrew L. Cole (No. 5712) |
| LITTLER MENDELSON, P.C. | 500 Delaware Avenue, Suite 1410 |
| 1601 Cherry Street, Suite 1400 | Wilmington, DE 19801 |
| Philadelphia, PA 19102 | (302) 652-3131 (Phone) |
| 267-402-3000 (Phone) | (302) 652-3117 (Fax) |
| mhank@littler.com | acole@coleschotz.com |
| | |
| Paul J. Kennedy (Admitted *Pro Hac Vice*) | *Attorneys for Plaintiff,* |
| LITTLER MENDELSON, P.C. | *loanDepot.com, LLC* |
| 815 Connecticut Avenue, NW, Suite 400 | |
| Washington, DC 20006.4046 | |
| 202-842-3400 (Phone) | |
| pkennedy@littler.com | |

Dated: <u>August 28, 2023</u>