# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOANDEPOT.COM, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MOVEMENT MORTGAGE, LLC, ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:23-cv-00681 (MN) |

## DEFENDANT'S OPPOSITION TO
## LOANDEPOT'S MOTION TO DISMISS COUNTERCLAIM

OF COUNSEL

Ari Karen
Katharine Thomas Batista
MITCHELL SANDLER LLC
1120 20th Street NW, Suite 725
Washington, D.C. 20036
Telephone: (202) 886-5260
akaren@mitchellsandler.com
kbatista@mitchellsandler.com

Dated: September 11, 2023

Lauren P. DeLuca (Del. Bar No. 6024)
CONNOLLY GALLAGHER LLP
1201 N. Market St., 20th Floor
Wilmington, DE 19801
Telephone: (302) 757-7300
ldeluca@connollygallagher.com

*Attorneys for Defendant*
*Movement Mortgage, LLC*

# TABLE OF CONTENTS

                                                                                                              **Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

LEGAL ARGUMENT ...................................................................................................... 4

      I.       Delaware Law Should Be Applied to Movement's Counterclaim ......................... 4

      II.      Movement Properly States a Claim for Tortious Interference with
               Contractual Relations ............................................................................................. 6

      III.     Movement Does Not Need to State a Claim for Abuse of Process to
               Support a Tortious Interference with Contractual Relations ................................. 9

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Corning Inc. v. SRU Biosystems*,
    LLC, 292 F. Supp. 2d 583 (D. Del. 2003) ................................................................. 6

*Crandall Corp. v. Navister Intern. Transp. Corp.*,
    395 S.E.2d 179 (S. C. 1990) ..................................................................................... 5

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*,
    430 F. Supp. 2d 346 (D. Del. 2006) .......................................................................... 5

*Grasso v. Katz*,
    No. 22-2896, 2023 U.S. App. LEXIS 18285 (3d Cir. July 19, 2023) ...................... 10

*Langford v. City of Atlantic City*,
    235 F.3d 845 (3d Cir. 2000) ..................................................................................... 6

*Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*,
    5 F.Supp.2d 238 (D.Del.1998) .................................................................................. 5

*Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010) .......................................................................... 4

*Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n*,
    856 F. Supp. 910 (E.D. Pa. 1994) ........................................................................... 10

*Soterion Corp. v. Soteria Mezzanine Corp.*,
    2012 WL 5378251 (Del. Ch. Oct. 31, 2012) .......................................................... 5, 8

*Superior Models, Inc. v. Tolkien Enters.*,
    1981 U.S. Dist. LEXIS 13905 (D. Del. June 16, 1981) ............................................ 8

*Sussex Cnty. v. Sisk*,
    2014 WL 3954929 (Del. Ch. Aug. 13, 2014) ......................................................... 10

*U.S. Bank Nat'l Ass'n v. Gunn*,
    23 F. Supp. 3d 426 (D. Del. 2014) ............................................................................ 8

*Wellin v. Wellin*,
    135 F. Supp. 3d 502 (D.S.C. 2015) ........................................................................... 5

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................1, 6

Restatement (Second) of Torts § 767 (1979)....................................................................................8

Federal Rule of Civil Procedure 26(f) ..........................................................................................3, 9

## PRELIMINARY STATEMENT

Defendant Movement Mortgage, LLC ("Movement" or "Defendant") by and through its undersigned counsel, hereby submits this Opposition to loanDepot.com, LLC's ("loanDepot" of "Plaintiff") Motion to Dismiss its Counterclaim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, this Court should deny Plaintiff's Motion.

Plaintiff filed this action as the final installment in a series of litigations brought against former loanDepot employees, all of whom subsequently moved to Movement. It is clear that loanDepot's strategy, when it realized that it was losing valuable employees due to its own operational and internal issues, was to scare the rest of its high producers from joining Movement by threatening them with lawsuits. In essence, loanDepot decided to make an example out of its employees leaving so that others were and are too scared about the financial and emotional impact from litigation brought by loanDepot, they will not similarly move. Of course, this strategy has harmed Movement because it was effective. Movement fairly was recruiting loan officers from loanDepot, who were so scared by the threats and pending litigation brought by loanDepot that they declined to join Movement. Accordingly, loanDepot has intentionally interfered with Movement's prospective business relations.

## BACKGROUND

As an initial matter, loanDepot's claims against Movement and/or its employees are not relevant to the determination of loanDepot's Motion to Dismiss. Rather, the only relevant facts are those set forth in the Counterclaim, which support Movement's claim.

Since at least 2020 loanDepot's reputation in the mortgage industry has suffered due to the unscrupulous conduct of its executives, its predatory and unlawful lending practices, its well-

1

documented toxic workplace culture, its failure to support its loan officers, and its litigious behavior toward ex-employees. These issues have been widely reported in national news media as well as social media and industry networking. Unsurprisingly, this has led to loanDepot employees seeking alternative employment. (Counterclaim ¶ 1.) As noted in a public filing by loanDepot's former employees, loan officers were leaving LoanDepot simply because they were "deeply concerned with loanDepot's troublesome business practices and compensation tactics designed to maximize its own profit at the expense of its employees, and without regard to its own customers." (Counterclaim ¶ 5.) Rather than addressing employees' concerns or reevaluating its policies and culture, loanDepot began maliciously targeting its competitors and former employees through baseless legal proceedings, in an attempt to harm its competitors' efforts to grow and attract new talent. (Counterclaim ¶ 2.)

Between 2020 and 2023, Movement fostered business relationships and networking connections with numerous prospective employees, including loan officers who were employed by loanDepot. (Counterclaim ¶ 26.) In general, this is what most good recruiters do and, specifically, this is unremarkable given that Movement and loanDepot are two of the larger lenders in the mortgage industry. Certainly, Movement expected that it would increase revenue and profits through the employment of these high producing employees, many of whom had worked at Movement previously, as any company would through the employment of high performing salespeople. (Counterclaim ¶ 27.) LoanDepot was aware of these relationships and Movement's intention, because it purposely targeted former loanDepot employees, including Messrs. Johnson and Luchko, in legal proceedings that were baseless, frivolous, not calculated to remedy any actual injury, and not calculated to protect any legitimate business interest, all in an effort to hamper Movement's recruiting efforts. (Counterclaim ¶ 28.) In fact, Plaintiff loanDepot has targeted

Movement and its employees through baseless and frivolous legal proceedings, for the sole purpose of interfering with Movement's business. (Counterclaim ¶ 7.)

Beginning in 2022, loanDepot launched a campaign of hindering Movement's business by filing an array of arbitration proceedings, which loanDepot knew had little to no merit, aimed at scaring prospective loan officers away from joining Movement, who had previously been seeking employment with Movement. (Counterclaim ¶ 8.) Specifically, in February 2022, loanDepot began arbitration proceedings against Movement employees Sean Johnson and Kevin Luchko. (Counterclaim ¶ 9.) These proceedings were not calculated to remedy any actual injury suffered by loanDepot, or to protect loanDepot's legitimate business interests. Rather, they were simply meant to harass the departed employees and set an example for other employees so they would not also join Movement. (Counterclaim ¶ 10.) This can be seen by the fact that they have been dragging on for a year and a half and depositions have not even started. In the arbitrations, the Parties attempted settlement, with no resolution. Here, despite loanDepot initiating this lawsuit, it initially refused to even engage in a Rule 26(f) discovery conference. Clearly, the intention is to delay the litigation, dissuade enough loan officers from moving and divert potential profit from Movement.

As a major residential mortgage lender with thousands of employees, loanDepot is well aware that an employer has no proprietary claim to an employee's experience, knowledge, or skill, and that an employee's personal business contacts do not constitute trade secrets belonging to an employer. (Counterclaim ¶ 11.) Further, loanDepot was well aware that employees were leaving the company in droves, not because of any prohibited solicitation, but of their own volition due to conditions at loanDepot. (Counterclaim ¶ 12.) Due to its frivolous arbitration proceedings against Messrs. Johnson and Luchko, other employees of loanDepot – who were being lawfully pursued by Movement and by recruiters on Movement's behalf – were intimidated and scared away from

joining Movement. (Counterclaim ¶ 13.) In fact, one of loanDepot's Regional Managers even held a Zoom meeting with loan officers who he knew had offer letters from Movement and told them not to sign them because a big lawsuit was about to happen. The loan offers were scared by this and some chose not to join Movement because of it. Accordingly, as loanDepot clearly intended, its litigious behavior has tortiously interfered with Movement's prospective business relations and profits. (Counterclaim ¶ 13.)

**LEGAL ARGUMENT**

**I.     Delaware Law Should Be Applied to Movement's Counterclaim**

The Parties do not dispute that Delaware law should be applied to Movement's Counterclaim. This Court must apply Delaware's choice of law rules to determine which state's laws will be applied to the matter. "While no reported Delaware cases establish that an actual conflict must exist, the Third Circuit, as well as other federal and state courts within Delaware, have concluded that Delaware's choice of law rules require that an actual conflict exist prior to engaging in a complete conflict of laws analysis." *Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010) (string cite of nine cases that reiterate this proposition.)

"[T]he first step in applying Delaware's choice of law rules requires an examination of the competing laws proposed by the parties to determine whether an actual conflict exists." *Id*. at 467. Here, the only other potential laws that might govern Movement's counterclaim is South Carolina, where Movement is headquartered. As an initial matter, it does not appear that there is an actual conflict between the law of South Carolina and Delaware with respect to proving a claim for

tortious interference of prospective business relations. In South Carolina,[1] "[t]o state a cause of action for intentional interference with prospective contractual relations, a plaintiff must prove: (1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff." *Crandall Corp. v. Navister Intern. Transp. Corp.*, 395 S.E.2d 179, 180 (S. C. 1990). Similarly, to establish a claim for tortious interference with a prospective contractual relationship in Delaware, a plaintiff must prove: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted." *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 5 F.Supp.2d 238, 243 (D.Del.1998). "To meet the intentional interference prong, a plaintiff must prove that the defendant's interference with a business opportunity was intentional and wrongful or improper. The interferer must also have "knowledge of the relationship or expectancy." *Soterion Corp. v. Soteria Mezzanine Corp.*, 2012 WL 5378251, at *14 (Del. Ch. Oct. 31, 2012). Thus, no choice of law analysis is triggered. As loanDepot notes, both Parties are incorporated in Delaware and, thus, application of Delaware law is supported by analogous authority. *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 357 (D. Del. 2006) (holding resolution of whether to apply Delaware, South Carolina, Kansas or Missouri law

---

[1] South Carolina courts have noted that labeling the cause of action as interference with prospective economic advantage or, as here, "with prospective business relations," does not change the substance of the cause of action." *Wellin v. Wellin*, 135 F. Supp. 3d 502, 519 (D.S.C. 2015). Irrespective of being labeled, "tortious interference with prospective business relations" in the Counterclaim, South Carolina has labeled this tort "intentional interference with prospective contractual relations" and has made clear that the specific verbiage used in a complaint does not alter the substance of the Court's analysis as a claim for international interference with prospective contractual relations. *Id*.

to tortious interference with prospective contractual relations claim where parties were both incorporated in Delaware did not depend on a choice of law determination as law was same in all four states, and, for convenience, Delaware law was applied.)

II. **Movement Properly States a Claim for Tortious Interference with Contractual Relations**

Movement has properly stated a claim for Tortious Interference with Prospective Contractual Relations with legal sufficiency. Movement has clearly set forth that it reasonably expected numerous additional loan officers to join its employ, loanDepot was well aware of this expectancy and intentionally filed numerous claims so these individuals "would not also join movement," and, thus, loanDepot "cost Movement significant damages, including loss of revenues and profits, loss of reputation, and loss of goodwill in the industry." (Counterclaim ¶¶ 8-10, 18, 20-27.) Accordingly, Movement has properly pleaded the elements of its tortious interference claim and this Court should deny loanDepot's Motion to Dismiss.

"A Rule 12(b)(6) motion tests legal sufficiency. When considering such a motion, a court accepts as true all allegations and draws all factual inferences in the light most favorable to the non-moving party." *Langford v. City of Atlantic City*, 235 F.3d 845, 845 (3d Cir.2000). Movement clearly alleges its tortious interference claim with legal sufficiency. The elements of tortious interference with prospective contractual relations include "(1) the existence of a valid business relation or expectancy, (2) the interferer's knowledge of the relationship or expectancy, (3) intentional interference that (4) induces or causes a breach or termination of the relationship or expectancy and that (5) causes resulting damages to the party whose relationship or expectancy is disrupted." *Corning Inc. v. SRU Biosystems*, LLC, 292 F. Supp. 2d 583, 585 (D. Del. 2003). Movement satisfies each of these elements.

First, Movement clearly alleges the existence of a valid business relationship or expectancy. "Between 2020 and 2023, Movement fostered business relationships with networking connections with numerous prospective employees, including loan officers who were employed by loanDepot." (Counterclaim ¶ 20.) It is clear that Movement kept in touch with these individuals in the hopes that they would join Movement's employ. Specifically, these loan officers were ones that Movement had relationships with either because they had worked at Movement previously, or Movement's recruiters knew from the mortgage industry. Further, "Movement had a reasonable expectation of future business relationships with potential employees who indicated interest in joining Movement as these individuals has applied for positions at Movement, and/or were in discussions with Movement and Movement's recruiters concerning their desire to join Movement." (Counterclaim ¶ 24.) Further, there was a reasonable probability that these loan officers would have joined Movement's employ, were it not for loanDepot's actions, because they had already expressed interest in doing the same. (Counterclaim ¶ 25.) Many of these loan officers

Second, Movement clearly alleges that loanDepot was aware of this expectancy and intentionally interfered with the same through a targeted litigation campaign aimed at dissuading employees from joining Movement. "loanDepot knowingly and purposefully intimidated and discouraged its loan officers from joining Movement," by targeting former loanDepot employees, like Sean Johnson and Kevin Luchko, in legal proceedings that were "baseless, frivolous," and not calculated to remedy any true injury or protect any legitimate business interest. (Counterclaim ¶¶ 22, 26-27.) It is clear that such conduct may form the basis of a tortious interference claim. Threatened or filed litigation can constitute improper interference "if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to

7

bring his claim to definitive adjudication." *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 435 (D. Del. 2014) (citing Soterion Corp. v. Soteria Mezzanine Corp., 2012 Del. Ch. LEXIS 257, 2012 WL 5378251, at *14 (Del. Ch. Oct. 31, 2012 and Restatement (Second) of Torts § 767 (1979) (denying summary judgment for defendant where disputed fact as to whether defendant's threatened litigation was in bad faith); *Superior Models, Inc. v. Tolkien Enters.*, No. 78-396, 1981 U.S. Dist. LEXIS 13905, at *56 (D. Del. June 16, 1981) ("defendants threatened litigation against plaintiff, competitor of a licensee of the defendants, and against prospective and actual distributors of the goods of the plaintiff" could constitute tortious interference with business relations) (summary judgment stage). Further, in *Allscripts Healthcare, LLC v. Andor Health, LLC*, the court denied the counterclaim defendant's motion to dismiss the claim of tortious interference, because the counterclaim plaintiff had sufficiently pleaded that the counterclaim defendant intended to use lawsuits against it and a contemporaneous media campaign to injure the counterclaim plaintiff. 2021 WL 4425767 (Sept. 27, 2021).

Here, loanDepot has unequivocally commenced litigation or threatened legal action against at least four Movement employees, and now has filed the present action against Movement. Further, loanDepot's strategy in every action is simply to delay. As to the arbitrations against Mr. Johnson and Mr. Luchko, those have been pending for over a year, despite loanDepot having won a temporary injunction in *Luchko* whereby the Court ordered return of all the documents it sought in the Luchko case, clearly leaving no damages to pursue. *See loanDepot Motion to Dismiss*, Ex. B. Further, in the Johnson matter, there is no evidence to date of solicitation, despite Johnson producing thousands of documents and loanDepot has delayed discovery so significantly less than 100 documents have been produced and no depositions have been taken. Further, in very this matter, despite loanDepot initiating this lawsuit, it refused to engage in discovery and was only

after lengthy email discussions that loanDepot begrudgingly agreed to engage in a Rule 26(f) call and still refuses to engage in depositions. Finally, Movement is in possession of an email, upon which it relied in drafting its counterclaim, whereby a former loanDepot employee complains that he and others with offer letters from Movement were told by former loanDepot Regional Manager, Brian Covey, not to sign them because "a big lawsuit" will be coming from loanDepot. Accepting Movement's well-pleaded facts as true, it has satisfied its burden at the pleading stage that loanDepot is using these various lawsuits as a way to dissuade loan officers from joining Movement and disrupting Movement's potential contracts with those individuals.

Finally, Movement sets forth that it suffered damages when the expected relationship – the employment of new high producing loan officers from loanDepot – was disrupted. As alleged, due to loanDepot's scare tactics, "loanDepot deterred loan officers from joining Movement" as many of the loan officers who Movement was in discussions with did not ultimately join loanDepot and, therefore, Movement has suffered monetary and other damages. (Counterclaim ¶¶ 18, 23.)

### III. Movement Does Not Need to State a Claim for Abuse of Process to Support a Tortious Interference with Contractual Relations

The claims of tortious interference with prospective contractual relations and abuse of process are separate, independent claims with different elements. There is no case law to support that the former must be predicated or otherwise incorporate the latter. Accordingly, Movement does not need to allege an abuse of process claim to support its tortious interference claim, which has been properly pleaded.

Movement is not required to allege an abuse of process claim to support a tortious interference claim, nor can loanDepot set forth any case law that supports such a proposition. loanDepot's suggestion that Movement must set forth an abuse of process claim as an element of its tortious interference claim is nonsensical and without any support in Delaware's, or any other

9

jurisdiction's, jurisprudence. As discussed above, Delaware authority is clear that improper litigation can form the basis for an intentional interference claim, and none of those cases suggest that it instead transforms the claim into one of abuse of process. The claims are distinct, and courts analyze them as such. *See Grasso v. Katz*, 2023 U.S. App. LEXIS 18285 (3d Cir. July 19, 2023) (analyzing tortious interference and abuse of process claims separately, applying respective elements to each claim and not requiring the.) The elements of a claim of abuse of process are: "(1) an ulterior motive; and (2) a willful act in the use of the legal process that is not proper in the regular conduct of the proceedings, i.e., the current litigation." Abuse of process as a claim pertains to the "perversion of the process after it has been issued . . ." *Sussex Cnty. v. Sisk*, 2014 WL 3954929, at *4 (Del. Ch. Aug. 13, 2014). That is not the claim that Movement has made. Rather, Movement properly claims that ongoing litigation is being used to tortiously interference with its prospective contractual relations; namely, its recruiting efforts.

Finally, *Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n*, 856 F. Supp. 910, 942–43 (E.D. Pa. 1994), cited by loanDepot in its moving, not only applies Pennsylvania, rather than Delaware law, but confirms that threatened litigation can form the basis of a tortious interference claim, separate and distinct from an abuse of process claim. In fact, that case discusses the Pennsylvania claim for wrongful use of civil proceedings and holds that "an action for intentional interference with contractual obligations based on a frivolous lawsuit is closely related conceptually to an action for wrongful use of civil proceeding," but still distinct. Id. at 943. Finally, the Court held the whether the defendant threatening the litigation has an "objective good faith belief" in the litigation is a consideration as to whether it was used for an improper purpose. Here, Movement has expressly alleged that loanDepot did not file the identified lawsuits "to protect any legitimate business

interest" or "remedy any actual injury," but merely "to hamper Movement's recruiting efforts." (Counterclaim ¶ 22.)

## CONCLUSION

For the reasons set forth above, this Court should deny loanDepot's Motion to Dismiss Movement's Counterclaim for tortious interference with prospective business relations.

| OF COUNSEL | CONNOLLY GALLAGHER LLP |
|---|---|
| Ari Karen<br>Katharine Thomas Batista<br>MITCHELL SANDLER LLC<br>1120 20th Street NW, Suite 725<br>Washington, D.C. 20036<br>Telephone: (202) 886-5260<br>akaren@mitchellsandler.com<br>kbatista@mitchellsandler.com<br><br>Dated: September 11, 2023 | */s/ Lauren P. DeLuca*<br>Lauren P. DeLuca (Del. Bar No. 6024)<br>1201 N. Market St., 20th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 757-7300<br>ldeluca@connollygallagher.com<br><br>*Attorney for Defendant*<br>*Movement Mortgage, LLC* |