# EXHIBIT 12

```
                                                          Page 1

 1                    JAMS ARBITRATION
 2      - - - - - - - - - - - - - - - - :
        LOANDEPOT.COM, LLC,             :
 3                                      :
                 Claimant,               :   JAMS NO.
 4                                      :
                    vs.                  :   5410000076
 5                                      :
        SEAN JOHNSON,                    :
 6                                      :
                 Respondent.             :
 7                                      :
        - - - - - - - - - - - - - - - - :
 8
 9            VIDEO DEPOSITION OF SEAN JOHNSON
10
11      DATE:              December 15, 2023
12      TIME:              10:17 a.m.
13      LOCATION:          Littler Mendelson, PC
                           815 Pennsylvania Avenue, NY
14                         Suite 400
                           Washington, DC 20006
15
16
17      REPORTED BY:       Constance H. Rhodes
                           Reporter, Notary
18
19
20              Veritext Legal Solutions
                1250 Eye Street, Northwest
21                 Washington, DC 20005
22
```

```
 1                    A P P E A R A N C E S
 2
 3    On behalf of Claimant:
 4         PAUL KENNEDY, ESQUIRE
           LESLIE EHRET, ESQUIRE
 5         CAMELLIA CAMPANIELLI
           Littler Mendelson, P.C.
 6         815 Connecticut Avenue, NW
           Suite 400
 7         Washington, DC 20006
           Npkennedy@littler.com
 8
 9    On behalf of Respondent:
10         JESSIE FELDMAN, ESQUIRE
           BREE MURPHY, ESQUIRE
11         Mitchell Sandler, LLC
           1120 20th Street, NW
12         Suite 725
           Washington, DC 20036
13         Jfeldman@mitchellsandler.com
14
15    ALSO PRESENT:
16         Meredith Grant, loanDepot
           Jeffrey Elam, Videographer.
17
18                        *  *  *  *  *
19
20
21
22
```

Page 71

1    him over the years?
2         A    No.
3         Q    And so how was it you came to be texting
4    with him on October 5, 2021?
5         A    He's the CEO of Movement.
6         Q    Right.  So how is it you came to have a
7    text exchange with him on this day?
8         A    That's when I said I started engaging
9    with Movement.
10        Q    Okay.  Did you reach out to him, or did
11   he reach out to you?
12        A    Honestly, I don't recall.  I think -- I
13   don't recall how it happened exactly.
14        Q    Who was the first person at Movement you
15   -- you engaged with about potentially leaving
16   loanDepot?
17        A    Mike.
18        Q    Mike Brennan?
19        A    Yeah.
20        Q    And this text, is this around the time
21   of the first communication you had with him about
22   leaving loanDepot?

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 72

1    A    Well, it was the first communication I
2    had with him regarding a possible opportunity at
3    Movement, not necessarily about leaving loanDepot.
4    Q    Okay.  Can you explain what you mean?
5    A    I was looking to see what companies
6    would be a good fit should I decide to leave
7    loanDepot.
8    Q    Okay.  And that's really my question.
9    Had you decided to leave loanDepot as of
10   October 5, 2021?
11   A    I don't think you truly decide until
12   you've actually stopped working at the company.
13   Q    Well, I guess my question is were you
14   open to exploring other opportunities in or around
15   October 5, 2021, as opposed to having it in your
16   mind that you were going to leave?
17   A    I believe that's what I said.
18   Q    Well, I'm confused.  Which one was it?
19   A    Okay.  I was -- I was open to exploring
20   opportunities.
21   Q    Okay.  So maybe to say that differently,
22   so as of October 5, 2021, you didn't have it in

Page 73

1   your mind that you just had to leave loanDepot?
2        A    No.
3        Q    So -- and maybe to say that differently,
4   if -- if the opportunity at Movement hadn't been
5   attractive enough to you, you would have stayed at
6   loanDepot?
7        A    It would be difficult to say.
8        Q    Why is that?
9        A    There's a lot of factors.  So if an
10  opportunity didn't work, loanDepot would have been
11  a place I would have had to have stayed at least
12  temporarily to figure it out.  But I didn't
13  really -- this is where it gets a little
14  complicated -- I didn't quit -- leave loanDepot; I
15  left Brian Covey.
16       Q    Okay.  And when -- when did you start
17  actively looking to leave -- leave loanDepot as a
18  result of Brian Covey?
19       A    Around this time.
20       Q    Okay.  And -- so this text message talks
21  about a conversation with Mr. Brennan.  Did -- did
22  you in fact talk to him on the phone around that

Page 74

1  time?
2      A    For a few minutes, yeah.
3      Q    And do you recall what was discussed at
4  that point with Mr. Brennan?
5      A    I just asked him what possible
6  opportunities might be available.
7      Q    Do you remember what he said?
8      A    Oh, he said he didn't know at the time,
9  and he would kind of think about it, and get me in
10 touch with the divisional, Chris Shelton, who ran
11 that area.
12     Q    Okay. And so you did get in touch with
13 Chris Shelton eventually, right?
14     A    I believe so, like, a week or so later.
15         (JOHNSON Exhibit Number 16 was marked
16         for identification.)
17 BY MR. KENNEDY:
18     Q    Mr. Johnson, I've handled you what's
19 been marked as Exhibit 16 to your deposition,
20 which is another text exchange, SJ5413, October 7,
21 2021.
22         So this looks like it's an exchange

1   between you and Mr. Brennan?
2       A   Yes.
3       Q   About catching up?
4       A   Yes.
5       Q   So was this a -- was this a call
6   subsequent to the one you had around October 5th?
7       A   It would be after the call two days
8   earlier, yes.
9       Q   Okay.  So this was the second call then
10  you had with Mr. -- Mr. Brennan?
11      A   Yes.
12      Q   Do you recall what you discussed in that
13  call?
14      A   I don't remember the details of the
15  conversation, but I believe this is when he said
16  he would introduce me more to Chris, and Chris
17  would be able to see if there was an opportunity
18  that would fit.
19      Q   Okay.
20          (JOHNSON Exhibit Number 17 was marked
21          for identification.)
22

Page 113

1  BY MR. KENNEDY:
2      Q   So it's -- it's your testimony then that
3  the -- the day after you spoke with Mr. Brennan
4  for the first time --
5      A   Uh-huh.
6      Q   -- about an opportunity at Movement that
7  the next day you had flight arrangements to go to
8  Charlotte to interview; is that right?
9      A   Yes.
10     Q   All right.  And how long was that first
11 call with Mr. Brennan on the 5th?
12     A   Probably 20, 30 minutes.
13     Q   Okay.  And you -- you testified earlier
14 that there was no opportunity that he had
15 available at that point?
16         MS. FELDMAN:  Objection.
17         THE WITNESS:  Didn't know of an
18 opportunity yet.
19 BY MR. KENNEDY:
20     Q   Right.  So in that 20-to-30-minute call,
21 Mr. Brennan didn't mention any specific
22 opportunity at Movement to you, correct?

Page 114

1        MS. FELDMAN:  Objection.
2        THE WITNESS:  I don't believe so, no.
3   BY MR. KENNEDY:
4       Q   Okay.  And the very next day then you
5   got flight arrangements to go to Charlotte?
6       A   Correct.
7       Q   Okay.  And you did end up going to
8   Charlotte for the interview, correct?
9       A   For an introduction, yes.
10      Q   Okay.  So was it an interview or an
11  introduction?
12      A   Probably both.
13      Q   Did anyone from loanDepot go with you?
14      A   No.
15           (JOHNSON Exhibit Number 20 was marked
16           for identification.)
17  BY MR. KENNEDY:
18      Q   Mr. Johnson, I've handed you what's been
19  marked as Exhibit 20 to your deposition.  It
20  purports to be a text message, SJ3212 to 3213,
21  October 13th, 2021.
22           Do you recognize this text exchange?

Page 120

1   A   Not really discussions about day-to-day
2   duties.  It's -- the job's the job at every
3   company.
4   Q   Okay.  Well, did you have discussions
5   about the -- the -- that you were a producer at
6   loanDepot?
7   A   They were aware.
8   Q   Okay.  Did you have discussions about
9   it?
10  A   Yes.  And as referenced in the previous
11  text, my personal production.
12  Q   And who -- whom did you meet with when
13  you went to Movement?
14  A   Chris Shelton.  Casey Crawford.
15  Q   Okay.  Anyone else?
16  A   I believe I met Mike again there.
17  Q   Mike?
18  A   Brennan.
19  Q   Okay.  Anyone else?
20  A   Various, like, Jake Fehling.  Just heads
21  of all the different departments.
22  Q   When you say heads of all the various

Page 121

```
 1    different departments, what -- what do you mean?
 2         A    So head of ops, Jason Stenger stopped in
 3    for a minute.
 4         Q    Anyone else?
 5         A    I mean I ran into a lot of people, but
 6    not like in-depth conversations or anything like
 7    that.
 8         Q    When you say you ran into a lot of
 9    people, were these people you already knew?
10         A    Well, I worked there previously.
11         Q    So there were people you already knew?
12         A    Yes.
13         Q    And did you get introduced to any new
14    people?
15         A    Chris Shelton.  That was the first time
16    I met him in person.
17         Q    Had you met -- had you met Casey
18    Crawford before?
19         A    That was the longest conversation I'd
20    had with him at the time.  I'd met him in passing
21    when we were at different events.
22         Q    Okay.  He's the head of the company,
```

Page 420

1    CERTIFICATE OF NOTARY PUBLIC

2            I, CONSTANCE HUNT RHODES, the officer

3    before whom the foregoing deposition was taken, do

4    hereby certify that the witness whose testimony

5    appears in the foregoing deposition was duly sworn

6    by me; that the testimony of said witness was

7    taken by me in stenotypy and thereafter reduced to

8    typewriting under my direction; that said

9    deposition is a true record of the testimony given

10   by said witness; that I am neither counsel for,

11   related to, nor employed by any of the parties to

12   the action in which this deposition was taken; and

13   further, that I am not a relative or employee of

14   any attorney or counsel employed by the parties

15   thereto, nor financially or otherwise interested

16   in the outcome of the action.

17

18                    *[signature: Constance Hunt Rhodes]*

                      CONSTANCE HUNT RHODES

19                    Notary Public in and for

                      the District of Columbia

20

     My commission expires:

21   January 31, 2028

22